LENN RAY HERNDON v. LaRHUE H. ROBINSON, INDIVIDUALLY AND AS SUC-
CESSOR ADMINISTRATOR FOR THE ESTATE OF GARTHA A. HERNDON, DECEASED,
CLARA HERNDON HATLEY, DILLIE HERNDON WILSON, HATTIE
BELL HERNDON TEASELEY, VIOLA HERNDON STROUD, RAYMOND
BURNETTE, JUANITA BURNETTE DEANS, EVELYN BURNETTE MOR-
ROW, BERNICE BURNETTE ALSTON, MINNIE BURNETTE BYERS,
RUBY BURNETTE PHILYAW, ODESSA BURNETTE THOMPSON,
WILLIAM HENRY HERNDON, THURMAN HERNDON, OTIS HERNDON,
VERNON HERNDON, JR., MADGE HERNDON PAGE, JAMES W. HERN-
DON, ERSELDINE HERNDON BAILEY, LEON WALKER HERNDON,
KATHLEEN HERNDON BURT AND RUFUS L. EDMISTEN, ATTORNEY
GENERAL OF THE STATE OF NORTH CAROLINA

No. 8110SC902

(Filed 18 May 1982)

1. **Descent and Distribution § 8; Constitutional Law § 23.7— illegitimate child—
constitutionality of statute governing intestate succession**

    The statute permitting an illegitimate child to inherit by, through and
from his putative father only if certain acknowledgment or filing requirements
have been followed, G.S. 29-19, is constitutional.

2. **Descent and Distribution § 8— illegitimate child—acknowledgment by father
—no constructive compliance with statute**

    Plaintiff did not show a "constructive" compliance with the provisions of
G.S. 29-19(b)(2) permitting an acknowledgment of paternity by the father's
written admission of paternity executed or acknowledged before a certifying
officer and filed in the office of the clerk of court by offering written
documents signed by the putative father, including applications for insurance
and employment, which acknowledged the putative father's paternity of plain-
tiff.

APPEAL by plaintiff from *Hobgood, Judge*. Order filed 22
May 1981 in Superior Court, WAKE County. Heard in the Court of
Appeals 7 April 1982.

Gartha A. Herndon died intestate in Wake County, North
Carolina, on 19 June 1980. No children were born of his marriage
to Eula Ray Herndon, who died 28 August 1966. Mr. Herndon did
not remarry. Plaintiff alleges that he is the son of Gartha Hern-
don and Evie (Hatley) Terry; that Mr. Herndon paid the medical
expenses incurred as a result of plaintiff's birth on 2 June 1931
and provided financial support to his mother for the benefit of the
plaintiff until she married Mr. Terry; and that Mr. Herndon open-
ly acknowledged plaintiff as his son.

Plaintiff began living with Mr. and Mrs. Herndon in 1940 when he was nine years old. His early school records indicate that Mr. Herndon was his father. Plaintiff adopted the last name of Herndon, rather than Hatley, at Mr. Herndon's request. Mr. Herndon paid the premiums on a life insurance policy insuring the life of the plaintiff. The application showed Gartha Herndon as the father and beneficiary of the policy. Although plaintiff lived intermittently with his mother from 1942 until 1951, his school records consistently list Gartha Herndon as his father. The 1950 federal census shows plaintiff living in the Herndon household as "son." On 22 February 1959, Gartha Herndon signed an employment application for Eastern Airlines that listed plaintiff as his son.

Defendant LaRhue Robinson is serving as the successor administrator for the estate of Gartha Herndon. Other defendants include Mr. Herndon's sisters, nieces and nephews, all of whom claim adversely to him under N.C.G.S. 29-15(4).

Plaintiff filed an action for declaratory judgment on 28 January 1981, asking that the court find him to be the acknowledged natural son of Gartha Herndon and therefore entitled to take any property of the estate before and to the exclusion of all the defendants. The trial court dismissed plaintiff's complaint, from which dismissal plaintiff appeals.

*Ashmead P. Pipkin for plaintiff appellant.*

*Winston, Blue, Larimer & Rooks, by David M. Rooks III, for the individual defendant appellees.*

*Attorney General Edmisten, by Special Deputy Attorney General Charles J. Murray, for Rufus L. Edmisten, Attorney General of the State of North Carolina, defendant appellee.*

MARTIN (Harry C.), Judge.

[1] Plaintiff challenges the constitutionality of N.C.G.S. 29-19 (1976 & Cum. Supp. 1981), which permits an illegitimate child to inherit by, through and from his putative father if proof of paternity has been established by any one of the following methods: (1) a judicial decree entered during the life of the putative father; (2) the father's written admission of paternity "executed or acknowledged before a certifying officer named in G.S. 52-10(b) and filed during his own lifetime and the child's lifetime" in the

appropriate office of the clerk of superior court; (3) the father's acknowledgment of paternity in his duly probated will. A child may also be legitimated by the intermarriage of the mother and putative father at any time after the illegitimate child's birth. N.C. Gen. Stat. § 49-12 (1976). Absent the statute, plaintiff would have no right to inherit from his putative father. *Jolly v. Queen*, 264 N.C. 711, 142 S.E. 2d 592 (1965).

. There is nothing in the record to disclose, nor does plaintiff suggest, that the provisions of N.C.G.S. 29-19 have been complied with. It is plaintiff's position that the facts of his case, assuming for all purposes that he is the natural son of the deceased, prove fatal to the constitutionality of the statute.

Our Supreme Court in *Mitchell v. Freuler*, 297 N.C. 206, 254 S.E. 2d 762 (1979), addressed this issue on strikingly similar facts and held, upon the authority of *Lalli v. Lalli*, 439 U.S. 259, 58 L.Ed. 2d 503 (1978), that N.C.G.S. 29-19 and those statutes in *pari materia* "are substantially related to the lawful State interests they are intended to promote." 297 N.C. at 216, 254 S.E. 2d at 768. We are thus bound by the decision in *Mitchell* finding no violation of the equal protection and due process clauses of the United States Constitution by the statute. *See also Outlaw v. Trust Co.*, 41 N.C. App. 571, 255 S.E. 2d 189 (1979).

Plaintiff would have us reexamine the holding in *Mitchell* in light of our North Carolina Constitution. In the alternative, he contends that his evidence amply supports "constructive" compliance with the mandate of N.C.G.S. 29-19(b)(2), acknowledgment by written instrument filed during the lifetime of the putative father. Plaintiff's arguments are ably presented and well conceived. Nevertheless, we remain unpersuaded.

[2] Plaintiff contends that although he is unable to show strict compliance with the acknowledgment and filing requirements of N.C.G.S. 29-19(b)(2), he has complied with the spirit of the provision by offering numerous written documents, signed by Mr. Herndon, which clearly acknowledge paternity. Arguably, none of these writings admits of a conscious intent to establish paternity for purposes of intestate succession. Nevertheless, plaintiff argues, if the purpose of the statute is to safeguard the just and orderly disposition of a decedent's property and to ensure the

dependability of titles passing under intestate laws, he has fulfilled this purpose.

The formalities of N.C.G.S. 29-19(b)(2), however, serve a dual purpose. As a method for establishing paternity, a written instrument acknowledging paternity, executed and filed with the clerk of superior court, assures the requisite degree of certainty. The formalities further assure that the decedent intended that the illegitimate child share in his estate, much in the same way that a father intentionally excludes legitimate children as beneficiaries under his will. But, just as a father must act to *exclude* a legitimate child from sharing in his estate, he must also act to *include* an illegitimate child. The distinction is an important one. Yet, our statute does recognize certain acts permitting inclusion, and our Supreme Court has deemed these constitutionally sufficient.

We find that plaintiff's constitutional arguments, whether viewed against the federal or our state constitution, have been answered in *Mitchell, supra*. It is for our legislature or our Supreme Court to reevaluate the existing law as to any shortcomings and its intended purposes. Nor can we agree, upon the facts before us, that plaintiff's proof rises to the dignity of constructive compliance with N.C.G.S. 29-19(b)(2). Although there is little doubt that plaintiff is, in fact, the natural son of Gartha Herndon, the written documents he offers were executed for purposes other than to establish paternity as contemplated under the statute.

Affirmed.

Chief Judge MORRIS and Judge CLARK concur.