H. PARKS HELMS, ADMINISTRATOR OF THE ESTATE OF JESSIE HOGAN JACKSON, DECEASED, PLAINTIFF v. PHYLLIS YOUNG-WOODARD, MARCELLA BAKER, LINDA ALEXANDER AND CAROLINE ALEXANDER, DEFENDANTS

No. 9126SC31

(Filed 17 December 1991)

1. **Appeal and Error § 322 (NCI4th) — date of notice of appeal — not stamped on record copy — appeal heard in discretion of court**

   An appeal in an action to determine the effect of a foreign legitimation filed after the death of the father was heard by the Court of Appeals even though the notice of appeal in the record did not have a stamp on the face of the document indicating the date it was filed. Timely appeal is noted by the file stamp on the face of the notice of appeal and all papers included in the record must show the date filed by this file stamp. N.C.R. App. P. 9(b)(3).

   **Am Jur 2d, Appeal and Error §§ 320, 678.**

2. **Descent and Distribution § 13 (NCI4th) — foreign legitimation action — initiated after death of father**

   A foreign legitimation action filed after the putative father's death in North Carolina did not qualify the illegitimate children

HELMS v. YOUNG-WOODARD

[104 N.C. App. 746 (1991)]

to inherit under North Carolina's intestate succession laws. Read *in pari materia*, North Carolina's intestate succession laws require that all legitimation actions, both foreign and domestic, be reduced to judgment prior to the death of the putative father. It does not seem reasonable to read N.C.G.S. § 29-18 as permitting a foreign illegitimate child to inherit by use of a foreign order of affiliation obtained after the intestate's death when an illegitimate North Carolinian could not obtain such relief in a North Carolina court.

**Am Jur 2d, Bastards §§ 146, 150.**

3. **Descent and Distribution § 12 (NCI4th) — illegitimate children — 6 month period for filing claim against estate**

Illegitimate children are not permitted six months from their alleged father's death to prove their legitimacy by N.C.G.S § 29-19(b). The statute of limitations in that statute was intended to set a time limit for claims against a putative father's estate after legitimation, and was not meant to extend the law assuring finality of decrees.

**Am Jur 2d, Bastards § 148.**

4. **Descent and Distribution § 14 (NCI4th) — foreign legitimation action — begun after death of father — no intestate succession — constitutionality**

A trial court determination that a New York legitimation proceeding begun after the death of the alleged father did not permit the children to take by intestate succession did not violate the Equal Protection Clause or the Full Faith and Credit Clause. The North Carolina Supreme Court has held that N.C.G.S. § 29-19 and the statutes *in pari materia* are substantially related to the lawful State interests they are intended to promote. The United States Supreme Court has held that the Full Faith and Credit Clause does not require one state to give effect to another state's legitimizations which disturb interests already vested, and North Carolina determines rights of inheritance at the date of death.

**Am Jur 2d, Bastards §§ 146, 150.**

**Discrimination on basis of illegitimacy as denial of constitutional rights. 38 ALR3d 613.**

APPEAL by defendants Linda Alexander and Caroline Alexander from a judgment entered 3 August 1990 in MECKLENBURG County Superior Court by *Judge Shirley L. Fulton.* Heard in the Court of Appeals 9 October 1991.

*Helms, Cannon, Hamel & Henderson, by H. Parks Helms and Christian R. Troy, for plaintiff-appellee H. Parks Helms.*

*Norwood, Burke, McIntosh & Edmonds, by Barry S. Burke and Robert G. McIntosh, for defendants-appellees Phyllis Young-Woodard and Marcella Baker.*

*Faison, Fletcher, Barber & Gillespie, by Reginald B. Gillespie, Jr.; Barbara M. Sims, for defendants-appellants Linda Alexander and Caroline Alexander.*

LEWIS, Judge.

The issue in this case is whether a foreign legitimation action must be initiated prior to the death of the alleged father for illegitimate children to inherit under North Carolina's intestate succession laws.

The facts are not contested. Plaintiff-appellee, H. Parks Helms (administrator), is the duly qualified administrator of the estate of Jessie Hogan Jackson (decedent) who died intestate in Mecklenburg County, North Carolina on 8 August 1988. The administrator filed a declaratory judgment action seeking to determine which of the four parties making claims against decedent's estate are the lawful heirs. Defendant-appellees, Phyllis Young-Woodard and Marcella Baker, are decedent's legitimate children. Defendant-appellants, Linda and Caroline Alexander, claim to be decedent's legitimated children. Both Alexanders, domiciliaries of New York, obtained default orders of filiation from the New York Family Court on 24 February 1989, six months after Mr. Jackson's death. The Mecklenburg Superior Court reasoned that because North Carolina determines rights of inheritance at the date of death, only Young-Woodard and Baker were the lawful heirs. The trial court held that the Alexanders were not permitted to inherit by intestate succession because they were not legitimated, nor were they in the process of being legitimated, prior to decedent's death. The Alexanders appeal.

The Alexanders allege that it was error for the trial court to read into North Carolina's intestate succession laws a require-

ment that foreign legitimation proceedings must begin prior to the putative father's death. They allege that their exclusion from the class of heirs violates both the Full Faith and Credit (Article IV, § 1) and the Equal Protection (14th Amendment) Clauses of the United States Constitution. As their brief does not pursue their allegation of error regarding the award of attorneys' fees to defendant-appellees, we decline to address this matter. *See* N.C.R. App. P. 28(a).

[1] First we will consider the administrator's claim that this Court lacks jurisdiction to hear this appeal. He alleges that the Alexanders' appeal was not timely filed because the notice of appeal in the record does not have a stamp on the face of the document indicating the date that it was filed. Appeals must be filed within 30 days of the entry of judgment. N.C.R. App. P. 3(c). Timely appeal is noted by the file stamp on the face of the notice of appeal. All papers included in the record must show the date filed by this file stamp. N.C.R. App. P. 9(b)(3). Failure to comply with the Rules of Appellate Procedure may result in dismissal of the appeal. N.C.R. App. P. 25(b) and 34(b)(1).

We recognize that "[f]ailure to give timely notice of appeal . . . is jurisdictional, and . . . must be dismissed." *L. Harvey and Son Co. v. Shivar*, 83 N.C. App. 673, 675, 351 S.E.2d 335, 336 (1987) (citation omitted). This Court would be required to dismiss this appeal if the Alexanders failed to meet the 30 day filing deadline. However, it is within this Court's discretion to dismiss or to apply another sanction for placing an unstamped copy of a timely filed notice of appeal in the record. N.C.R. App. P. 25 and 34(b)(1). This Court has obtained a stamped file copy of the notice of appeal from the Office of the Clerk of Superior Court of Mecklenburg County which indicates that the appeal was timely filed. We take notice of this fact and hear this appeal. We caution future appellants to be more diligent in complying with the Rules of Appellate Procedure.

[2] Absent a statute to the contrary, illegitimate children have no right to inherit from their putative fathers. *Hayes v. Dixon*, 83 N.C. App. 52, 348 S.E.2d 609 (1986), *disc. rev. denied*, 319 N.C. 224, 353 S.E.2d 402 (1987), *cert. denied*, 484 U.S. 824, 98 L.Ed. 2d 50, 108 S. Ct. 88 (1987). There are several ways to legitimate children in North Carolina: 1) verified petition filed with the superior court by the putative father, 2) subsequent marriage of the parents,

or 3) civil action to establish paternity. N.C.G.S. § 49-10 through 49-14 (1984). Illegitimate children may inherit from their putative fathers if they have been legitimated by one of the above or if paternity has been established in an action for criminal non-support. N.C.G.S. § 29-19(b) (1984). Likewise, foreign illegitimate children must be legitimated in order to inherit from their North Carolina fathers. N.C.G.S. § 29-18 (1984).

The basis of the Alexanders' argument is that they have been legitimated by a foreign court and should, therefore, be permitted to inherit from their North Carolina father pursuant to N.C.G.S. § 29-18 (1984). Neither the trial court, nor this Court disputes their legitimacy. The issue is not whether North Carolina recognizes the Alexanders' foreign legitimation, but is whether this state recognizes a foreign legitimation which occurred after the death of the intestate for purposes of intestate succession. The issue is essentially one of timing. Read in *pari materia*, we conclude that North Carolina's intestate succession laws require that all legitimation actions, both foreign and domestic, be reduced to judgment prior to the death of the putative father.

North Carolina recognizes foreign legitimations. Under N.C.G.S. § 29-18:

> A child born an illegitimate who shall have been legitimated in accordance with G.S. 49-10 or 49-12 or in *accordance with the applicable law of any other jurisdiction*, . . . [is] entitled by succession to property by, through and from his father and mother and their heirs the same as if born in lawful wedlock.
> . . .

N.C.G.S. § 29-18 (1984) (emphasis added). On its face, this statute does not set a time requirement in which a foreign proceeding must be completed. However, read along with the other intestate succession laws enacted with it, it is clear that the legislature set the intestate's date of death as an internal statute of limitations for the completion of an action to legitimate. *See Jefferys v. Tolin*, 90 N.C. App. 233, 368 S.E.2d 201 (1988). The internal statute of limitations is illustrated by the fact that the statutes will not permit an illegitimate North Carolinian to be legitimated after the putative father's death, much less to inherit. All of the legitimation routes authorized by the North Carolina statutes require the proceeding to be completed prior to the putative father's death. The verified petition and marriage routes of legitimation obviously require a

live putative father. The civil paternity suit means of legitimation specifically provides that "[n]o such action shall be commenced nor judgment entered after the death of the putative father." N.C.G.S. § 49-14 (1984). Even the adjudication of criminal non-support, which does not legitimate, but provides an avenue for the illegitimate child to inherit, requires a live putative father at the time of the criminal proceeding. Hence, an illegitimate North Carolina child who cannot be legitimated after the death of his alleged father, is summarily denied the right to inherit from the intestate. We reiterate the sentiments of another panel of this Court. "The [intestate succession] statute[s] mandate what at times may create a harsh result. It is not, however, for the courts but rather for the legislature to effect any change." *Hayes*, at 54, 348 S.E.2d at 610.

Accordingly, it does not seem reasonable to read N.C.G.S. § 29-18 as permitting a foreign illegitimate child to inherit by use of a foreign order of affiliation obtained after the intestate's death when an illegitimate North Carolinian could not obtain such relief in a North Carolina court. Therefore, we hold that foreign legitimation actions must be completed prior to the intestate's death in order for the child to inherit under North Carolina law.

[3] The Alexanders claim that North Carolina law permits all illegitimate children six months in which to prove their legitimacy. We do not agree. *See Hayes* (where an illegitimate North Carolinian who was not legitimated prior to the death of the intestate was denied the right to inherit from the putative father's estate). The Alexanders base their argument upon N.C.G.S. § 29-19(b) which provides:

> Notwithstanding the above [legitimation] provisions, no person shall be entitled to take hereunder unless he has given written notice of the basis of his claim to the personal representative of the putative father within six months after the date of the first publication or posting of the general notice to creditors.

N.C.G.S. § 29-19(b) (1984). We agree that this statute sets out a statute of limitations. However, it is incorporated within this section in order to set a time limit for claims against a putative father's estate after legitimation. The beginning word "notwithstanding" indicates that "in spite of" the claimant's ability to prevail on the legitimation issues listed above, any person who intends to file a claim must do so within the 6 month period. As it is

possible that illegitimate children, like creditors, may not be known to the decedent's survivors, this time limit assures the finality of decrees and protects "those rightfully interested in [the] estates from fraudulent claims of heirship and harrassing litigation instituted by those seeking to establish themselves as illegitimate heirs." *Mitchell v. Freuler*, 297 N.C. 206, 215, 254 S.E.2d 762, 767 (1979) (*quoting Lalli v. Lalli*, 439 U.S. 259, 58 L.Ed.2d 503, 99 S.Ct. 518 (1978)). This time limitation was not meant to extend the positive law enumerated above. Because the Alexanders did not begin their legitimation action until after the decedent's death, they are not entitled to inherit from his estate and the trial court is affirmed.

[4] The Alexanders allege that the trial court's determination that they could not inherit from decedent's estate violates the Equal Protection Clause. We disagree. Our Supreme Court has upheld the intestate succession statute's requirement of legitimation prior to the *intestate's death* against Equal Protection challenges. In *Mitchell*, a plaintiff whose parents never married, but whose alleged father "acknowledged him," supported him, lived with his mother, maintained insurance policies and savings accounts for him, and gave him a job claimed that North Carolina's statutory requirements of legitimation prior to death violated his Constitutional rights. Our Court held that "G.S. 29-19 and the statutes in *pari materia* are substantially related to the lawful State interests they are intended to promote. We therefore find no violation of the Equal Protection and Due Process Clauses." *Id.* at 216, 254 S.E.2d at 768.

Further, the Alexanders allege that because they have been legitimated by the laws of another jurisdiction, North Carolina's determination that they are not heirs and their subsequent exclusion from their father's estate violates their Constitutional rights. We disagree. In *Olmsted v. Olmsted*, 216 U.S. 386, 54 L.Ed. 530, 30 S.Ct. 292 (1910), the United States Supreme Court held that the Full Faith and Credit Clause did not require one state to give effect to another state's legitimizations which disturb "interests already vested." *Id.* at 395, 54 L.Ed. 533. In general, North Carolina determines rights of inheritance at the date of death. Those children who are legitimate and those who are legitimated prior to the intestate's death are lawful heirs with rights vested immediately thereupon. Mr. Jackson's only legitimate children were Ms. Young-Woodard and Ms. Baker. Ms. Young-Woodard and Ms. Baker's right to inherit were vested, under North Carolina law, at the instant

Mr. Jackson died. Therefore, no other state can divest Ms. Young-Woodard and Ms. Baker of their inheritance by a judicial or legislative act subsequent to this vesting. *Id.* at 394-95, 54 L.Ed. 533. Accordingly, we find no violation of the Full Faith and Credit Clause in the case at bar.

Affirmed.

Judges ARNOLD and COZORT concur.