IN THE MATTER OF: ESTATE OF RALPH E. PATE, DECEASED

No. COA94-724

(Filed 5 July 1995)

**Husband and Wife § 30 (NCI4th)— premarital agreement— wedding plans cancelled—wedding seven months later— agreement in full force and effect—dissent from will not permitted**

The evidence was sufficient to support the clerk's findings with respect to the intentions of the parties as to a premarital agreement and to support the clerk's conclusion that the premarital agreement was in full force and effect at the time of the parties' marriage where the evidence tended to show that the parties executed a premarital agreement on 29 April 1992 by which each waived and released any right to inherit from the other or to dissent from the other's will; they subsequently called off their wedding and ended their relationship; they reconciled in late November 1992 and were married 2 December 1992; after the agreement was signed, neither ever mentioned it again; at deceased husband's request after the marriage, appellant wife placed the agreement, along with other personal papers belonging to her, in a safe deposit box where it was found when the box was inventoried under the supervision of the clerk following hus-

**IN RE ESTATE OF PATE**

[119 N.C. App. 400 (1995)]

band's death; and there was never a written revocation of the agreement. Though the agreement did not state a specific date for the wedding, it could properly be concluded that the parties considered their wedding to have occurred within a reasonable time of the signing of the agreement, and their cancelling of the wedding did not automatically terminate the premarital agreement.

**Am Jur 2d, Husband and Wife §§ 277, 294.**

Appeal by Margaret Clark Pate from order entered 30 March 1994 by Judge Frank R. Brown in Wilson County Superior Court. Heard in the Court of Appeals 23 March 1995.

*Rose, Rand, Orcutt, Cauley & Blake, P.A., by William R. Rand and Susan K. Ellis, for appellant.*

*Connor, Bunn, Rogerson & Woodard, P.A., by David M. Connor and C. Timothy Williford, for appellees.*

MARTIN, John C., Judge.

Margaret Clark Pate appeals from an order of the Superior Court affirming a determination by the Clerk of Superior Court that she has no right to dissent to the will of Ralph E. Pate or to inherit from his estate. We affirm.

The events leading to this appeal are: Ralph E. Pate, a resident of Wilson County, died testate on 26 April 1993, survived by his wife, Margaret Clark Pate, and three daughters by a previous marriage. His will was admitted to probate and letters testamentary were issued by the Clerk of Superior Court to Connie P. Holloman and Frankie P. Letchworth, who are Ralph Pate's daughters. The will made no provision for Margaret Clark Pate, and she filed a dissent from the will. In response, the co-executrixes asserted the provisions of a premarital agreement between Ralph Pate and Margaret Clark Pate as a bar to her right to dissent.

The issue of Margaret Clark Pate's right to dissent was heard by the Clerk of Superior Court. It was stipulated that Ralph E. Pate and Margaret Clark Pate executed a premarital agreement on 29 April 1992, were married 2 December 1992, and had no children of the marriage. Pursuant to the premarital agreement, each party waived and released any right to inherit from the other or to dissent from the other's will. It was further stipulated that there has been no written revocation of the premarital agreement.

IN RE ESTATE OF PATE

[119 N.C. App. 400 (1995)]

In addition to the stipulated facts, the Clerk heard evidence tending to show that the premarital agreement recited that the parties "contemplate that they will become married sometime in the near future," but did not specify any particular date. At the time they executed the agreement, Ralph Pate and Margaret Clark Pate planned to be married on 17 May 1992. However, on or about 4 May 1992, Ralph Pate called off the wedding. The parties terminated their relationship for a time, but reconciled in late November 1992, and were married 2 December 1992. After the premarital agreement was signed on 29 April 1992, neither of the parties ever mentioned it to the other again. However, at Ralph Pate's request after their marriage, Margaret Clark Pate placed the premarital agreement, along with other personal papers belonging to her, in a safe deposit box, where it was found when the box was inventoried under the supervision of the Clerk of Superior Court following Ralph Pate's death.

The Clerk found facts essentially as stated above and that the couple had entered into the premarital agreement voluntarily in contemplation of their prospective marriage whenever that might occur. The Clerk found that the parties intended to be bound by the premarital agreement at the time of their marriage on 2 December 1992, and concluded, therefore, that the premarital agreement was in full force and effect at the time of the parties' marriage and Ralph Pate's death and that Margaret Clark Pate had "waived, relinquished and released all of her right, title and interest accruing to or vesting in her as the widow of Ralph E. Pate to inherit from the said Ralph E. Pate or to dissent from his Will or to receive any property from his estate."

The substance of appellant's argument in this Court is that the evidence before the Clerk of Superior Court did not support the Clerk's findings with respect to the intentions of the parties or the Clerk's legal conclusion that the 29 April 1992 premarital agreement was in full force and effect at the time of the parties' marriage on 2 December 1992. Thus, appellant contends the Superior Court judge erred when he affirmed the Clerk's order denying her right to dissent from Ralph Pate's will.

In her appeal of the Clerk's order to the Superior Court, appellant set forth specific exceptions to the Clerk's findings of fact. On appeal to the Superior Court of an order of the Clerk in matters of probate, the trial court judge sits as an appellate court. *In re Estate of Swinson*, 62 N.C. App. 412, 303 S.E.2d 361 (1983). "When the order or judgment appealed from does contain specific findings of fact or con-

clusions to which an appropriate exception has been taken, the role of the trial judge on appeal is to apply the whole record test." *Id.* at 415, 303 S.E.2d at 363. In doing so, the trial judge reviews the Clerk's findings and may either affirm, reverse, or modify them. *In re Estate of Lowther,* 271 N.C. 345, 156 S.E.2d 693 (1967). "If there is evidence to support the findings of the Clerk, the judge must affirm." *Swinson* at 415, 303 S.E.2d at 363. Moreover, even though the Clerk may have made an erroneous finding which is not supported by the evidence, the Clerk's order will not be disturbed if the legal conclusions upon which it is based are supported by other proper findings. *See Black Horse Run Ppty. Owners Assoc. v. Kaleel,* 88 N.C. App. 83, 86, 362 S.E.2d 619, 622 (1987), *cert denied,* 321 N.C. 742, 366 S.E.2d 856 (1988). (In a non-jury trial, "[w]here there are sufficient findings of fact based on competent evidence to support the trial court's conclusions of law, the judgment will not be disturbed because of other erroneous findings which do not affect the conclusions.") The standard of review in this Court is the same as in the Superior Court. *In re Estate of Outen,* 77 N.C. App. 818, 336 S.E.2d 436 (1985), *disc. review denied,* 316 N.C. 377, 342 S.E.2d 896 (1986).

The Clerk found specifically that there was no evidence tending to show that either party intended that the premarital agreement not apply to their 2 December 1992 marriage. On appeal to the Superior Court, appellant excepted to the foregoing findings, requiring the judge to review the record to determine if there was evidence to support them. Appellant argues to this Court that the finding is incorrect to the extent the Clerk determined *there was no evidence* to show that appellant did not intend the premarital agreement to apply, because she testified that she had considered the parties' reconciliation as a whole new relationship and had considered the premarital agreement null and void after the anticipated May wedding did not occur. In view of this testimony, we must agree with appellant that the Clerk erred in making the negative finding that there was *no evidence* the parties intended not to be bound by the agreement.

However, appellant's testimony was simply some evidence of her intent and did not compel a finding by the Clerk that she intended not to be bound by the agreement when she married Ralph Pate in December. Testimony that neither of the parties spoke of the agreement after its execution, that appellant put it in her safe deposit box after the marriage, and that there was never a written revocation was also relevant and properly considered by the Clerk on the issue of intent. Our review of the record before the Clerk discloses sufficient

evidence to support the Clerk's affirmative findings that when the parties signed the premarital agreement on 29 April 1992, they intended "to be bound thereby in the event that they got married," and that it was their intent "to be bound by the terms and conditions of said Prenuptial Agreement when they married on 2 December 1992." Thus, the negative finding may be disregarded as surplusage.

Appellant next contends there was insufficient evidence to support the Clerk's finding that the premarital agreement was executed by the parties in contemplation of their prospective marriage "whenever it occurred," and that the marriage occurred "in the near future" and "within a reasonable time after 29 April 1992." We disagree.

The premarital agreement recites that the parties "contemplate that they will become married sometime in the near future." While the words "the near future" are admittedly susceptible of varying interpretations, the words would seem to encompass a marriage six months or even a year later, so long as the marriage occurred within a reasonable time of the parties entering into the premarital agreement.

In addition to evidence that the parties never again spoke of the agreement after its execution, and that the premarital agreement was found in appellant's safe deposit box, where she had placed it at the request of her husband, as noted above, there was no evidence of any change in the couple's circumstances in the six months between the originally scheduled marriage date in May, and the actual wedding in December, to suggest that the protection of their respective interests, as provided by the agreement, was no longer necessary, desirable, or of concern to them. These circumstances suggest that the parties considered the marriage to have occurred within a reasonable time of the premarital agreement. We agree with the Clerk and with the Superior Court that the parties' 2 December 1992 marriage occurred within a reasonable time, as contemplated by the parties, after the execution of their premarital agreement, and appellant's contentions to the contrary are overruled.

Appellant's final argument is that the Clerk erred in concluding the premarital agreement was in full force and effect at the time the parties married on 2 December 1992, and that as a result, appellant was not entitled to dissent from her deceased husband's will. She contends the contract was terminated by operation of law when the parties did not marry on 17 May 1992, as they had planned when they signed the agreement.

IN RE ESTATE OF PATE

[119 N.C. App. 400 (1995)]

"A premarital agreement becomes effective upon marriage," N.C. Gen. Stat. § 52B-5, and after marriage, may be amended or revoked only by written agreement. N.C. Gen. Stat. § 52B-6. However, we have not found any instance where the Court has decided the issue before us in this case, i.e., whether, before parties marry, a cancellation of their wedding plans automatically nullifies the provisions of a prenuptial agreement in the event the parties subsequently reconcile and marry. We note that prenuptial agreements "are to be construed liberally so as to secure the protection of those interests which from the very nature of the instrument it must be presumed were thereby intended to be secured." *Stewart v. Stewart*, 222 N.C. 387, 392, 23 S.E.2d 306, 309 (1942).

We are inclined to believe, and so hold, that the answer to the issue must be decided based on the intent of the parties as determined from the language of the agreement in question and the facts of each case. In the present case, the premarital agreement did not specify any date upon which the parties were to be married. Thus, the condition precedent to effectiveness of the agreement, the parties' marriage, must only have occurred within a reasonable time. *See Rodin v. Merritt*, 48 N.C. App. 64, 71-2, 268 S.E.2d 539, 544, *disc. review denied*, 301 N.C. 402, 274 S.E.2d 226 (1980). ("[W]here a contract does not specify the time of performance or the time of termination, the law will prescribe that performance must be within a reasonable time and that the contract will continue for a reasonable time, 'taking into account the purposes the parties intended to accomplish.'" *Citing Scarborough v. Adams*, 264 N.C. 631, 142 S.E.2d 608 (1965).)

The Clerk found that appellant and Ralph Pate entered into a premarital agreement which contemplated their future marriage, that the marriage occurred within a reasonable time thereafter, and that the parties intended to be bound by the terms of the agreement. We have determined those findings to be supported by the evidence before the Clerk, and we hold them sufficient to support the conclusion that the premarital agreement at issue in this case is fully enforceable, preventing appellant from dissenting from Ralph Pate's will. Accordingly, the judgment of the Superior Court sustaining the decision of the Clerk must be affirmed.

Affirmed.

Judges EAGLES and WALKER concur.